**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| THE ALLERE GROUP PROFESSIONAL | ) | |
| CORPORATION, a Pennsylvania | ) | Case No. _____ |
| Corporation, and BARNEY P. BOLT, JR., | ) | |
| | ) | |
| Plaintiffs, | ) | Action for Damages |
| | ) | |
| v. | ) | |
| | ) | |
| TGVZG, LLC, a Florida limited liability | ) | |
| company; | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

The Allere Group Professional Corporation, a Pennsylvania corporation ("The Allere Group") and Barney P. Bolt, Jr. ("Mr. Bolt" and, together with The Allere Group, "Plaintiffs") state as follows as and for their complaint against TGVZG, LLC, a Florida limited liability company ("Defendant"):

## PRELIMINARY STATEMENT

1.      Defendant created a fraudulent set of merchant cash advance ("MCA") loan documents and a fraudulent personal guaranty, with forged signatures and initials. Defendant then recorded a false UCC-1 against The Allere Group, purporting to hold a security interest in The Allere Group's receivables. Defendant then used the fraudulent loan documents and UCC-1 to attempt to steal not less than $99,236.50 from The Allere Group. When The Allere Group refused to give in to Defendant's attempted thievery, Defendant then contacted one of The Allere Group's clients (the "Client") and used the fraudulent MCA loan documents to freeze certain of Plaintiff's receivables. To this day, Defendant has never made any effort to actually sue to collect on The Allere Group's receivables, which remain frozen with the Client.

2.     The Allere Group and Mr. Bolt, respectively, seek declaratory judgment that the fraudulent MCA loan documents and the fraudulent personal guaranty are null, void, and of no force or effect whatsoever and (ii) damages for fraud.

## JURISDICTION

3.     The Court has jurisdiction over the subject matter of the above-captioned civil action (this "Action") pursuant to 28 U.S.C. § 1332.

4.     The amount in controversy in this Action, exclusive of interest and costs, exceeds the sum or value of $75,000.

## PARTIES AND RELEVANT PERSONS

**A.     The Allere Group**

5.     The Allere Group is a Pennsylvania corporation with offices in Kennett Square, Pennsylvania.

6.     The Allere Group is a contract outsource information technology labor provider (a staffing company) with niche specialty in the financial services sector.

**B.     Barney P. Bolt, Jr.**

7.     Mr. Bolt is a citizen of the State of Delaware.

8.     Mr. Bolt is the sole owner of 100% of the stock of The Allere Group.

9.     Mr. Bolt is a senior citizen.  As of the date of the commencement of this Action, Mr. Bolt is 78 years old.

**C.     TGVZG, LLC.**

10.     TGVZG is a Florida limited liability company with its principal place of business in Florida.

11.     TGVZG is in the business of merchant cash advance lending.

12.     TGVZG's articles of organization and most recent annual report state that Moshe Lehrer is the resident agent of TGVZG.

13.     TGVZG's articles of organization and most recent annual report states that Chaya Lehrer is the manager of TGVZG.

**E.      <u>Moshe Lehrer a/k/a Max Lehrer</u>**

14.     Moshe Lehrer is Defendant's resident agent.  Moshe Lehrer's address listed in his capacity as resident agent is 3300 Port Royale Drive N, Apt. 349, Fort Lauderdale, Florida, 33308.

15.     Moshe Lehrer is the brother of Defendant's manager, Chaya Lehrer.

16.     Moshe Lehrer is an adult citizen of the State of Florida.  Upon information and belief, Moshe Lehrer currently resides at 4020 Galt Ocean Drive 110, Fort Lauderdale, Florida, 33308.

17.     Moshe Lehrer uses the alias "Max" and is commonly known as "Max Lehrer."  He has also used the aliases "Max Lear" and "Max Lehar."

18.     Moshe Lehrer is involved in the business of brokering and/or making MCA loans. Separately, Moshe Lehrer is involved in purchases, sales and transport of art.

19.     Moshe Lehrer was born on March 28, 2001 and, thus, as of the date of the commencement of this Action, is 20 years old.

20.     Moshe Lehrer has been involved in the world of MCA lending or, at least, his name has been used in connection with MCA lending, since he was seventeen (17) years old.

21.     In addition to his involvement with Defendant, Moshe Lehrer is involved with, at least, two other separate merchant cash advance businesses with offices in Florida, New York and California.

22.     From December 5, 2018 and continuing through the date hereof, Moshe Lehrer has served and serves as manager of an MCA lending business named USD Funding, LLC (https://www.usdfunding.com/), a Florida limited liability company, with an address of 5301 North Federal Highway, Suite 395, Boca Raton, Florida, 33487.

23.     Moshe Lehrer is, or, at least as of October 1, 2020, was, involved with an MCA lending business named Shield Funding (https://shieldfunding.com/) with a New York office at 2 West 46th Street, Suite 204, Mezzanine Floor, New York, New York, 10036 and a California office at 6837 Hayvenhurst Avenue, Van Nuys, California, 91406.

**D.     Chaya Lehrer**

24.     Chaya Lehrer is Moshe Lehrer's sister.

25.     Chaya Lehrer is the Manager of TGVZG.

## FACTUAL BACKGROUND

**A.     Moshe Lehrer Secured a Position with Plaintiff's Affiliated Company, Comer Enterprises, Inc.**

26.     Mr. Bolt is the father of Nicole Bolt Comer ("Ms. Comer"), the President and CEO of The Allere Group.  Ms. Comer is also the founder, sole owner, President and CEO of Comer Enterprises, Inc. ("CEI"), a Pennsylvania corporation.

27.     From October 2018 through September 24, 2020, Moshe Lehrer defrauded The Allere Group, CEI and Ms. Comer, resulting in (i) Mr. Bolt and Ms. Comer entering into discussions with Moshe Lehrer toward Moshe Lehrer's potential purchase of 49% of the stock in each of The Allere Group and CEI and (ii) Moshe Lehrer becoming an employee of CEI, making a salary of approximately $200,000 per year.

28.     The history of Moshe Lehrer's fraudulent activity is more fully set forth in a separate civil action pending in the United States District Court for the District of Delaware, styled

as *Comer, et al. v. Lehrer, et al.*, Case No. 1:21-cv-00334-CFC (D. Del.) (the "Delaware Action"). A copy of the complaint filed in the Delaware Action is attached as **Exhibit A** (the "Delaware Complaint").

29.     By September 2020, Ms. Comer realized that Moshe Lehrer had defrauded her, CEI and The Allere Group.

30.     On September 24, 2020, Ms. Comer met with Moshe Lehrer at the offices of CEI and The Allere Group in Kennett Square, Pennsylvania, and informed Moshe Lehrer that he was terminated from his employment with CEI and that Ms. Comer and Mr. Bolt were terminating all talks toward Moshe Lehrer's purchase of 49% of the stock of CEI and/or The Allere Group (the "Termination Meeting").

31.     Ms. Comer was accompanied at the Termination Meeting by CEI's corporate attorney, CEI's chief operations officer and a personal friend.

32.     When Ms. Comer told Moshe Lehrer the reasons for his termination, primarily the fact that he defrauded her and her father, Moshe Lehrer stated, "I can explain all of my lies."

33.     Moshe Lehrer was irate at the Termination Meeting and threatened Ms. Comer before leaving the room.

**B.     Defendant's Bad Acts Described Herein are Part of Moshe Lehrer's and his Father's Vindictive Campaign of Terror and Harassment Against Ms. Comer, CEI and The Allere Group.**

34.     Immediately following the Termination Meeting, Moshe Lehrer and his father, Avraham Lehrer a/k/a "Joe Levin," commenced a campaign of terror, harassment, invasion of privacy, blackmail, malicious prosecution, and tortious interference against Ms. Comer.  See Exhibit A.

35.     Defendant's bad acts described herein are part of Moshe Lehrer's and Avraham Lehrer's campaign of harassment against Ms. Comer.

36.     The same law firm represents Moshe Lehrer, Defendant, Moshe Lehrer's mother, and another company related to them named KMI Group, Inc.

**C.     Defendant Used the Fraudulent Loan Documents and the UCC-1 to Attempt to Steal At Least $99,236.55 From Plaintiff.**

37.     By letter dated November 13, 2020, Defendant, through counsel, demanded payment from Plaintiff in the amount of not less than $99,236.55.  A copy of the letter dated November 13, 2020, from Defendant's counsel to Plaintiff's counsel is attached as **Exhibit B** (the "Demand Letter").

38.     The Demand Letter refers to a document purporting to be dated February 10, 2020, entitled Future Receivables Sale and Purchase Agreement (the "Fraudulent Loan Agreement"), which has four documents attached:  (i) Personal Guaranty of Performance (the "Fraudulent Personal Guaranty"); (ii) Addendum to Future Receivables Sale and Purchase Agreement and Guaranty (the "Fraudulent Addendum"); (iii) Rider 2: Original Fee (the "Fraudulent Origination Fee Rider"); and (iv) Rider 2 [*sic*]:  Applicable Fees (the "Fraudulent Applicable Fees Rider" and, together with the Fraudulent Loan Agreement, the Fraudulent Personal Guaranty, the Fraudulent Addendum, the Fraudulent Origination Fee Rider and the Fraudulent Applicable Fee Rider, the "Fraudulent Loan Documents").

39.     A true and correct copy of the Fraudulent Loan Documents is attached as **Exhibit C**.

40.     The Fraudulent Loan Documents, together, are a classic example of an MCA loan agreement pursuant to which (i) a borrower sells future receivables to a lender for a certain sum; then (ii) the borrower is required to pay back the lender a much higher amount at a later date;

(iii) the borrower's repayment of the loan is secured by a security interest in the borrower's future receivables; and (iv) a principal of the borrower personally guarantees the repayment of the loan.

41.     The Fraudulent Loan Agreement purports to bind The Allere Group to certain obligations, primarily the repayment of $70,200, plus liquidated damages in the event of default, plus interest on all amounts owed at 9% *per annum*.

42.     The Fraudulent Personal Guaranty purports to personally bind Mr. Bolt, personally, to certain obligations, primarily the obligation to guaranty The Allere Group's performance under the Fraudulent Loan Agreement.

43.     Also attached to the Demand Letter is a UCC-1, filed through Defendant's counsel (who also represents Moshe Lehrer) pursuant to which Defendant asserts a security interest in all of Plaintiff's assets (the "UCC-1").   A true and correct copy of the UCC-1 is attached hereto as **Exhibit D**.

44.     The Demand Letter incorrectly states that Defendant paid to The Allere Group $46,800 to purchase certain of Plaintiff's future receivables.  *See* Exhibit B.

45.     The Demand Letter states that The Allere Group was required to pay $70,200 to Defendant on or before March 3, 2020.  *Id.*

46.     The Demand Letter states that The Allere Group owes liquidated damages to Defendant in the amount of $23,166. *Id.*

47.     The Demand Letter states that The Allere Group owes Defendant default interest at 9% *per annum* on the entire amount owed, from March 3, 2020. *Id.*

48.     The Demand Letter states that, as of the date thereof, The Allere Group is indebted to Defendant in the total amount of $99,236.55 as of November 13, 2020. *Id.*

49.     Mr. Bolt never signed any of the Fraudulent Loan Documents, including the Fraudulent Personal Guaranty.

50.     All signatures and initials on the Fraudulent Loan Documents, including the Fraudulent Personal Guaranty, are forged.

51.     Defendant never paid $48,600 to The Allere Group.

52.     Before the transmittal of the Demand Letter to Plaintiff's counsel, neither The Allere Group nor Mr. Bolt had ever seen any of the Fraudulent Loan Documents.

    **D.**     **Defendant Used the Fraudulent Loan Documents to Interfere with The Allere Group's Business Relations and to Freeze Certain of The Allere Group's Receivables.**

53.     On or about November 17, 2020, counsel for Defendant transmitted a letter to the Client, demanding that the Client put a hold on monies that may then have been due or payable to The Allere Group.

54.     On or about December 4, 2020, counsel for Defendant followed up with a second letter, again, demanding that the Client place a hold on amounts owed to The Allere Group and threatening to sue the Client, if the Client did not acquiesce.

55.     As the result of Defendant's letters and the fraudulent UCC-1, the Client has frozen and continues to hold $70,200 that is rightfully owed to The Allere Group.

### COUNT I

### DECLARATORY JUDGMENT:  THE FRAUDULENT LOAN DOCUMENTS ARE NULL, VOID AND OF NO FORCE OR EFFECT WHATSOEVER

56.     Each of the foregoing allegations is incorporated as though fully set forth herein.

57.     Defendant has presented the Fraudulent Loan Documents, including the Fraudulent Personal Guaranty, as a set of valid, *bona fide*, properly executed and delivered agreements.

58.     The initials and signatures on the Fraudulent Loan Documents, including the Fraudulent Personal Guaranty, purporting to be those of Mr. Bolt, are forgeries.

59.     Mr. Bolt never signed or initialed any of the Fraudulent Loan Documents, including the Fraudulent Personal Guaranty.

60.     As the result of Defendant's purposeful transmittal of the Fraudulent Loan Documents to the Client and Defendant's assertions that such documents constitute a valid, *bona fide*, properly executed and delivered agreement, the Client has frozen $70,200 in receivables that are justly owed to The Allere Group from the Client.

61.     The parties' dispute concerning the validity of the Fraudulent Loan Documents, including the Fraudulent Personal Guaranty, is ripe for adjudication by the Court and requires an immediate and definite determination of the parties' rights.

62.     The parties have adverse interests concerning the Fraudulent Loan Documents, including the Fraudulent Personal Guaranty.

63.     A final judgment of this Court will be conclusive in deciding the parties' rights concerning the Fraudulent Loan Documents, including the Fraudulent Personal Guaranty.

64.     A final judgment of this court will provide a practical resolution to the parties' dispute concerning the validity of the Fraudulent Loan Documents and will enable the Client to make a responsible decision concerning the release of The Allere Group's funds.

*[continued on following page]*

## COUNT II

## FRAUD

65.    Each of the foregoing allegations is incorporated as though fully set forth herein.

66.    The Fraudulent Loan Documents are all fraudulent.

67.    Defendant intentionally caused the false UCC-1 to be filed based on the Fraudulent Loan Documents.

68.    Defendant intentionally transmitted the Fraudulent Loan Documents to the Client and intentionally misrepresented the Fraudulent Loan Documents as valid, properly executed and delivered agreements.

69.    Not knowing them to be fraudulent and not wanting to potentially face liability, the Client reasonably relied on the Fraudulent Loan Document and froze $70,200 in receivables that are justly owed to The Allere Group.

70.    As the result of Defendant's fraudulent creation and dissemination of the Fraudulent Loan Documents, including the Fraudulent Personal Guaranty, and the false UCC-1, Plaintiffs have suffered damages.

[*continued on following page*]

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in its favor:

a)    entering declaratory judgment that the Fraudulent Loan Documents, including the Fraudulent Personal Guaranty, are null, void and of no force or effect whatsoever;

b)    directing Defendant to take all actions necessary to release and terminate the Fraudulent UCC-1;

c)    awarding Plaintiffs compensatory and punitive damages;

d)    ordering Defendant to pay Plaintiffs' attorneys' fees and costs; and

e)    awarding Plaintiffs such other and further relief as is just and proper.

Respectfully submitted,

**REED SMITH LLP**

Dated: June 17, 2021
    Wilmington, Delaware

Respectfully submitted,

**REED SMITH LLP**

By:  /s/ *Mark W. Eckard*
    Brian M. Rostocki (DE 4599)
    Mark W. Eckard, Esquire (DE 4542)
    Nicholas R. Rodriguez, Esquire (DE 6196)
    1201 North Market Street, Suite 1500
    Wilmington, DE 19801
    Telephone:  (302) 778-7500
    Facsimile:  (302) 778-7575
    Email:  brostocki@reedsmith.com
    Email:  meckard@reedsmith.com
    Email:  nrodriguez@reedsmith.com

    Counsel to The Allere Group Professional
    Corporation, a Pennsylvania Corporation, and
    Barney P. Bolt, Jr.